UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JACQUE HUINER, | ) | CIV. 11-4172-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING IN PART AND |
| ARLINGTON SCHOOL DISTRICT; | ) | DENYING IN PART DEFENDANTS' |
| CHRIS LUND, individually and in | ) | MOTION FOR SUMMARY JUDGMENT |
| his official capacity as | ) | |
| superintendent of Arlington | ) | |
| School District; and | ) | |
| RHONDA GROSS, individually | ) | |
| and in her official capacity as | ) | |
| principal of Arlington School | ) | |
| District, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jacque Huiner, filed suit against defendants, Arlington School District, Chris Lund, and Rhonda Gross, for alleged violations of the Americans with Disabilities Act (ADA), her constitutionally protected First Amendment rights under 42 U.S.C. § 1983, her statutorily protected right to be free from retaliation following her discipline of a student, and state-law claims of intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants move for summary judgment on all claims. Huiner agrees to the dismissal of her retaliation claim following her discipline of a student.

Huiner resists defendants' motion with respect to all other claims. For the following reasons, the motion is granted in part and denied in part.[1]

## BACKGROUND

The facts, viewed in the light most favorable to Huiner, the nonmoving party, are as follows:

Huiner graduated in 2002 from South Dakota State University with a Bachelor's degree in art education. Huiner was hired by the Arlington School District to teach K-12 art in January 2003 following interviews with Superintendent Lund and Principal Gross. She attained tenure status in 2007. Huiner's teaching contract for the 2010-2011 school year required her to teach K-12 art and serve as the yearbook coordinator. No deficiencies were noted on Huiner's annual reviews prior to the 2010-2011 school year.

Although not specifically set out in her contract, Huiner was also required to teach the credit recovery class in the 2010-2011 school year. The credit recovery class allowed students to recover credit for classes previously taken but failed. The parties dispute what responsibilities Huiner had with respect to the credit recovery class. Huiner alleges she instructed students in

---

[1] Also pending before the court is Huiner's motion for spoliation sanctions. Docket 48. In her motion and accompanying briefs, Huiner argues defendants engaged in the spoliation of electronic evidence in their data systems. Huiner requests the court deny defendants' motion for summary judgment because of her spoliation allegations. The information Huiner claims may have been stored in defendants' data systems would not alter this order. This order relies on the undisputed facts currently in the record, and the court will take up Huiner's motion for spoliation sanctions at a later time.

the various subjects, gave students grades, and ultimately awarded the students academic credit. Because she is only certified to teach art, Huiner does not believe she was qualified to teach the credit recovery class.

During a teacher in-service on August 17, 2010, Huiner approached Gross in Gross's office and expressed concern about being assigned to teach the credit recovery class. Huiner believed she was not qualified to teach the class because she is only certified to teach art. Huiner also expressed concern that she would not have any planning time in her daily schedule to prepare her curriculum for her K-12 art courses. Gross told Huiner that she should speak with Cindy Hansen, the person who had been in charge of the credit recovery program during the previous two school years. No action was taken by Gross or Lund following this meeting, and Huiner was expected to continue teaching the credit recovery class.

Huiner alleges Gross put her under intense scrutiny following their meeting in Gross's office. On September 23, 2010, Huiner admonished Gross's daughter for talking during a quiz. When Gross first heard about the incident from her daughter, Gross took written statements from three students in the class and Huiner. Huiner's statement mentioned another student who had used inappropriate language during the class. Gross did not follow up with Huiner about the incident with Gross's daughter and instead spoke with Huiner about the inappropriate language conduct.

Five days later, Gross sent a letter to Huiner to communicate concerns with Huiner's teaching performance. There were four major areas of concern: (1) displaying a negative attitude toward students and staff; (2) not holding students accountable for swearing and intimidating others; (3) time on task during art; and (4) poor planning which leads to too much down time.

Gross conducted formal evaluations of Huiner's art classes on December 10 and December 13, 2010. Gross noted several deficiencies in her evaluation and chose to place Huiner on a plan of assistance, which was implemented on December 20, 2010. The plan of assistance set out areas where Huiner was expected to improve and created a deadline of March 1, 2011, to achieve such improvement. Gross would routinely observe Huiner's classes to see if progress was being made. Gross was scheduled to complete a formal written evaluation and make the decision to recommend renewal or nonrenewal of Huiner's teaching contract to the school board on March 1, 2011.

On December 17, 2010, Huiner met with her physician's assistant, Karen Buman, regarding her anxiety. Buman diagnosed Huiner with anxiety and depression, likely stemming from her concerns about possibly getting fired. Huiner again met with Buman on January 7, 2011. Huiner's anxiety and depression had not improved. Huiner was unable to maintain her nutritional needs, was having difficulty caring for her children, and had sleep pattern deficits. Huiner lost over thirty pounds from September 7, 2010, to June 29, 2011.

At the request of Huiner, Buman drafted a letter dated February 8, 2011, to the school administration requesting certain accommodations for Huiner. The letter noted Huiner's stress, anxiety, weight loss, and inability to sleep. The accommodations requested in the letter were:

- limit observations of her in the classroom to one 50 minute class period per week.

- always include another impartial representative in any meeting.

- allow telephone calls during work hours to medical clinicians or others for needed support.

- provide positive reinforcement and feedback.

- provide specific examples in writing of how to improve in the areas of deficiency.

- encourage her to walk away from stressful confrontations with supervisors.

- allow her to take a 10 minute break and go to a place where she feels comfortable to use relaxation techniques or contact a support person.

- divide large assignments or expectations into smaller tasks or with specific goals.

- restructure job to include only essential functions if stressful situations continue to negatively impact her.

- allow a flexible work environment with flexible scheduling, modified break schedule, and time to leave for counseling appointments.

- allow her to play soothing music using a computer or music player.

- plan for and allow uninterrupted work time.

>     - provide coverage if she becomes overwhelmed with stress
>     from the work environment and needs to leave.

Docket 38-2 at 2-3.

Lund and Gross first responded to Huiner's request for accommodations through a letter dated February 15, 2011. They indicated that they understood Huiner was asking for reasonable accommodations pursuant to the Americans with Disabilities Act. They also responded to each of the accommodation requests, agreeing to provide some, rejecting some, and requesting clarification as to others.

On February 24, 2011, Huiner responded to the February 15 letter by hand delivering her own letter, which provided the sought after clarification of her requested accommodations. Lund and Gross responded with another letter on February 28, 2011. No further communications occurred among Huiner, Gross, and Lund regarding Huiner's request for accommodations. In fact, the three letters were the only communications about Huiner's requested accommodations; the parties never spoke face to face about Huiner's request.

On March 1, 2011, Gross performed the final written evaluation under the plan of assistance. After noting areas of concern, Gross concluded the evaluation by recommending nonrenewal of Huiner's teaching contract. Lund then provided Huiner with notice of his intent to recommend nonrenewal of her contract on March 15, 2011. Huiner took a medical leave of absence on April 13, 2011, which lasted the remainder of the school year.

School board hearings were held on April 27, 2011, and May 10, 2011, to take up the issue of whether to renew Huiner's teaching contract following Gross and Lund's nonrenew recommendations. On July 11, 2011, the Arlington School Board issued Findings of Fact and Conclusions of Law and determined not to renew Huiner's contract because of her neglect of duty and poor job performance. Huiner appealed this decision to the Third Circuit Court of the State of South Dakota. The Third Circuit affirmed the school board's decision.

On June 20, 2011, Huiner filed a charge of discrimination with the South Dakota Division of Human Rights against defendants on the basis of disability. The South Dakota Department of Labor denied Huiner's charge of discrimination, and the United States Equal Employment Opportunity Commission issued a notice of right to sue on October 14, 2011.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of*

*Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## ANALYSIS

## I.    Americans with Disabilities Act–Failure to Accommodate

Huiner alleges Arlington School District violated the ADA[2] by failing to make a reasonable accommodation. An employer's failure to make a reasonable accommodation to a disabled employee is a form of prohibited discrimination under the ADA. *Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003) ("The ADA mandates that companies . . . provide reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee[.]"). A failure to accommodate claim is analyzed under a "modified burden-shifting analysis" as opposed to the

---

[2] Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009. ADA Amendments Act (ADAAA) of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). The ADAAA "broadened the definition of what constitutes a disability[.]" *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010). The ADAAA is applicable here because the events involved occurred after the ADAAA became effective.

*McDonnell Douglas* burden-shifting analysis. *Id.* at 712. Under the modified

burden-shifting analysis, Huiner must make a facial showing that she has an

ADA disability, has suffered an adverse employment action, and is a qualified

individual.[3] *Id.* A qualified individual must possess the requisite skill,

education, experience, and training for her position and be able to perform the

essential job functions, with or without reasonable accommodation. *Id.* If the

employer disputes that the employee is able to perform the essential job

functions, then the burden shifts to the employer to put on evidence of the

essential job functions. *Id.*

> Further, if the employee cannot perform the essential functions of
> the job *without* an accommodation, [s]he must only make a facial
> showing that a reasonable accommodation is possible. The burden
> of production then shifts to the employer to show that it is unable
> to accommodate the employee. If the employer can show that the
> employee cannot perform the essential functions of the job even
> with reasonable accommodation, then the employee must rebut
> that showing with evidence of h[er] individual capabilities. At that
> point, the employee's burden merges with [her] ultimate burden of
> persuading the trier of fact that [s]he has suffered unlawful
> discrimination.

*Fenney*, 327 F.3d at 712 (internal quotations and citations omitted).

An employer has no duty to accommodate if the applicant fails to make a

request for an accommodation. *Bradley v. Little Rock Wastewater Util.*, No. 12-

---

[3] Under the modified burden-shifting analysis, Huiner does not need to
make a prima facie showing that the adverse employment action was the result
of intentional discrimination. Instead, the discrimination occurs when the
employer fails to abide by the legally imposed duty of providing a reasonable
accommodation. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004).

1405, 2013 WL 535794, at *3 (8th Cir. Feb. 14, 2013) (citing *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002) (holding that an employee must provide his employer with "enough information that, under the circumstances, [the employer] can be fairly said to know that [the employee] sought accommodation for his disability")). But when a disabled applicant requests an accommodation, the employer must engage in an interactive process to determine whether the parties can find and agree upon a reasonable accommodation. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir. 1999).

Arlington School District argues Huiner's failure to accommodate claim fails for three reasons: (1) Huiner is not disabled under the ADA; (2) Huiner did not request accommodations within the meaning of the ADA; and (3) Arlington School District made a good faith effort to assist Huiner in making any requested accommodations.[4]

### A. Disability Under the ADA

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The definition of disability "shall be

---

[4] Arlington School District's reply also contends Huiner is collaterally estopped from asserting her ADA failure to accommodate claim because of the decision of the school board. But in the same paragraph defendants note that Huiner did not raise any ADA issues at the school board hearing. If the issue was never raised before, then it cannot be precluded now.

construed in favor of broad coverage of individuals . . . to the maximum extent permitted[.]" *Id.* at § 12101(4). A person has an actual disability if she "has (1) a physical or mental impairment that (2) substantially limits one or more major life activities of the individual." *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1094 (8th Cir. 2007) (internal quotations omitted). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, . . . learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). With the passage of the ADAAA, the main focus in cases brought under the ADA "should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4).

Arlington School District argues Huiner has not shown she suffers from an ADA disability because she has failed to introduce evidence showing her anxiety substantially limits one of her major life activities. Huiner responds by claiming her anxiety and associated panic attacks substantially limit her ability

to maintain her nutritional needs, care for her children, work, and sleep.[5] She relies on Buman's testimony and medical records to support her contentions.

When asked what activities of daily living Huiner was unable to perform, Buman stated she was unable to maintain her nutritional needs, had difficulty caring for her children, and had sleep pattern deficits. Docket 55-4 at 4. The medical records from Huiner's appointments with Buman correspond to Buman's testimony. *See, e.g.*, Docket 55-11 at 3 (detailing Huiner's fatigue, decreased concentration, sleep disturbances, and lack of appetite). Huiner's difficulty maintaining her nutritional needs is further evidenced by her significant weight loss during that time period; she lost over thirty pounds from September 7, 2010, to June 29, 2011. Docket 55-11 at 3. Based on this evidence, the court finds Huiner has come forth with sufficient facts to make a prima facie showing that her anxiety constitutes a disability under the ADA. This is especially the case when considering the relaxed standards imposed under the ADAAA for determining what constitutes a disability.

---

[5] Arlington School District takes issue with the fact that Huiner claims her anxiety limits her ability to maintain her nutritional needs, care for her children, and sleep because she did not allege these facts in her complaint. Arlington School District has not cited authority that requires a plaintiff who is asserting an ADA failure to accommodate claim to plead in her complaint every single limitation that the alleged disability places on the plaintiff. Such a stringent pleading requirement runs counter to the current notice pleading system in place. Thus, the court will not require Huiner to comply with such a stringent requirement.

**B.  Request for Reasonable Accommodation**

Arlington School District argues Huiner did not request reasonable accommodations within the ADA. "A reasonable accommodation should provide the disabled individual an equal employment opportunity, including an opportunity to attain the same level of performance, benefits, and privileges that is available to similarly situated employees who are not disabled." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

The accommodations Huiner requested, through the letter written by Buman and given to defendants, were:

- limit observations of her in the classroom to one 50 minute class period per week.

- always include another impartial representative in any meeting.

- allow telephone calls during work hours to medical clinicians or others for needed support.

- provide positive reinforcement and feedback.

- provide specific examples in writing of how to improve in the areas of deficiency.

13

- encourage her to walk away from stressful confrontations
with supervisors.

- allow her to take a 10 minute break and go to a place
where she feels comfortable to use relaxation techniques or
contact a support person.

- divide large assignments or expectations into smaller
tasks or with specific goals.

- restructure job to include only essential functions if
stressful situations continue to negatively impact her.

- allow a flexible work environment with flexible scheduling,
modified break schedule, and time to leave for counseling
appointments.

- allow her to play soothing music using a computer or
music player.

- plan for and allow uninterrupted work time.

- provide coverage if she becomes overwhelmed with stress
from the work environment and needs to leave.

Docket 38-2 at 2-3. Arlington School District contends that these

accommodations are not modifications to the work place that would allow

Huiner to perform the essential functions of her job. The court disagrees. For

example, providing specific samples in writing of how to improve in areas of

deficiency was a modification to how Huiner received feedback and would allow

her to better understand the expectations surrounding the essential functions

of her job. With an understanding of the essential functions of the job, Huiner

would be able to perform such functions. A jury could find one or more of the

above accommodations reasonable and falling within the ADA.

Even if the accommodations requested by Huiner were unreasonable and do not fall within the ADA, the simple act of requesting the accommodations required defendants to initiate an interactive process with Huiner to determine the appropriate reasonable accommodation. *Fjellestad*, 188 F.3d at 952. Thus, Huiner met her burden of requesting an accommodation.

## C.  Good Faith Effort

Arlington School District argues it made a good faith effort to provide the requested accommodations and engage in the necessary interactive process. Huiner disagrees and must demonstrate that (1) Arlington School District knew about her disability; (2) she requested accommodations or assistance for her disability; (3) Arlington School District did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for Arlington School District's lack of good faith. *Ballard*, 284 F.3d at 962. Buman's letter in which she informed defendants of Huiner's disability and requested accommodations establishes the first two required showings. And Arlington School District does not argue that Huiner could not have been reasonably accommodated. Thus, the only issue is whether Arlington School District made a good faith effort to assist Huiner in seeking accommodations.

Following Huiner's request for accommodations, Arlington School District had a duty to initiate an informal interactive process to determine whether the

parties could find and agree upon reasonable accommodations. *Fjellestad*, 188 F.3d at 952. The interactive process requires both parties to act in good faith, analyze the job duties and the employee's specific limitations, and then identify potential accommodations. *Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 727 (8th Cir. 1999).

Arlington School District claims it acted in good faith and attempted to engage in an interactive process. It directs the court to three letters that included a dialogue between Huiner and Arlington School District. The first letter, dated February 15, 2011, was the initial response provided to Huiner following her request for accommodations, which occurred on February 8, 2011. In the response, Arlington School District responded to the various accommodations requested by Huiner, agreeing to some, rejecting some, and asking for further clarification on others. The second letter was Huiner's response to Arlington School District's letter, and it was hand delivered on February 24, 2011. This letter responded to Arlington School District's position on her initial requests, noting agreement to some of Arlington School District's accommodations and also providing the sought after clarification. The third letter was Arlington School District's follow up to Huiner's letter and was sent on February 28, 2011. There was no further communication, written or verbal, by Huiner or Arlington School District regarding her disability or accommodations therefor.

Arlington School District relies heavily on Huiner's failure to respond to the February 28, 2011, letter. By not responding, Arlington School District argues Huiner broke down discussions about any possible accommodations and thus ended the interactive process. What Arlington School District fails to consider, however, is the fact that on March 1, 2011, just one day after receipt of Arlington School District's letter, Gross advised Huiner that she would be recommending nonrenewal of her contract. Docket 39-8 at 4. Because a principal's recommendation on whether to renew a teacher's contract carries a considerable amount of weight, a reasonable jury could conclude that Arlington School District was not acting in good faith and any further participation in the interactive process at that time would have been useless.

Huiner argues Arlington School District's actions following her request for accommodations demonstrate that it did not act in good faith. Huiner claims her workload could have been reduced by not having her teach the credit recovery class until she had her disability under control. Because teaching the credit recovery class was not specifically called for in her teaching contract, a reasonable jury could find that allowing Huiner time away from teaching the credit recovery class was a reasonable accommodation.

Huiner also takes issue with the fact that Arlington School District did not meet with her face to face to discuss her disability and how it could be accommodated, especially because she was under the plan of assistance at the

time and a decision on whether her contract would be renewed was soon approaching. The court agrees. The entirety of Arlington School District's efforts to engage in the interactive process is the contents of two letters. Moreover, the decision to recommend nonrenewal was made just fourteen days after Arlington School District's first attempt at participation in the interactive process. A reasonable jury could find that Arlington School District's attempt to engage in the interactive process was not done in good faith.

After reviewing the record, the court finds Huiner has made a facial showing that Arlington School District failed to make a good faith effort to assist her in seeking accommodation. Therefore, summary judgment is denied with respect to Huiner's failure to accommodate claim.

## II.    First Amendment Claim Under § 1983

Defendants Gross and Lund argue Huiner cannot establish a First Amendment retaliation claim.[6] To establish a § 1983 claim for retaliation in violation of her right to free speech under the First Amendment, Huiner must

---

[6] Defendants also argue issue preclusion applies to Huiner's First Amendment retaliation claim because the school board decision and the Third Circuit Court opinion that affirmed the school board decision preclude Huiner from arguing that her teaching contract was nonrenewed for any reason other than her neglect of duty and poor performance. Typically a court will decide whether issue preclusion applies before analyzing the merits of a claim. Here, however, an analysis of whether issue preclusion applies is unnecessary because the court finds plaintiff's First Amendment retaliation claim fails as a matter of law.

show: (1) she engaged in protected speech; (2) defendants Gross and Lund[7] responded with adverse action that would chill a person of ordinary firmness from continuing with such speech; and (3) the adverse action was motivated by Huiner's protected speech. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012). Specifically, defendants contend Huiner did not engage in protected speech.

As a public employee, Huiner's speech is entitled to First Amendment protection if: (1) she spoke as a citizen, and not as an employee, on a matter of public concern, and (2) her right to free speech outweighs defendants' interest in promoting the efficiency of its public services. *Davenport v. Univ. of Ark. Bd. of. Tr.*, 553 F.3d 1110, 1113 (8th Cir. 2009). Whether Huiner spoke as a citizen on a matter of public concern is a question of law for the court. *McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 920 (8th Cir. 2006). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of the speech, and that speech must relate to some matter of political, social or other concern to the community." *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir. 1999) (internal quotations omitted).

---

[7] Huiner's First Amendment retaliation claim is against Gross and Lund; Huiner excluded Arlington School District from this claim in her complaint.

Huiner argues she engaged in protected speech because she was speaking on a matter of public concern when she pointed out that she was not qualified to give grades and academic credit to students in the credit recovery class. She claims her motivation was to inform the public that children are not being given the quality of education to which they are entitled to by law. "When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern." *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007). If the employee's main motivation for the speech was to further her "private interests rather than to raise issues of public concern, her speech is not protected, even if the public would have an interest in the topic of her speech." *Id.*

After examining the content, form, and context of Huiner's speech, the court finds she was not engaging in protected speech when she expressed concern about being assigned to the credit recovery class. First, the content of the speech involved the duties and responsibilities of Huiner's position. Huiner's stance was that *she* was not qualified to perform the work assigned to *her*. There is no indication Huiner voiced concern about the general idea of an unqualified teacher teaching kids, as she now claims. Indeed, she also expressed concern that the credit recovery class would not allow her adequate time in her daily schedule to prepare her curriculum for her other classes.

Huiner's speech was entirely focused on her specific job responsibilities and her specific qualifications, which leads to the conclusion that her speech was motivated by private interests. *See McGee*, 471 F.3d at 921 ("A public employee's speech is not protected by the First Amendment if its 'owes its existence' to [her] professional responsibilities.").

Second, the form and context of the speech shows Huiner was attempting to further her private interests and not attempting to raise an issue of public concern. The incident occurred during a break at an in-service for Arlington School District teachers. It was spoken in a private office and was directed to one individual, Gross, who was Huiner's supervisor. The speech did not take place in a public forum but rather occurred in a private isolated office during working hours. Moreover, the speech was not directed to a broad audience but was directed to a single individual—Huiner's supervisor. These circumstances do not show Huiner was attempting to provide the public with information. Rather, the form and context of the speech further support the conclusion that Huiner's speech was motivated by private interests.

Huiner's speech was motivated by her private interests and therefore did not address a matter of public concern. As such, the speech is not protected by the First Amendment and her claim for retaliation fails as a matter of law.

## III. Intentional Infliction of Emotional Distress

Gross[8] argues Huiner's claim for intentional infliction of emotional distress also fails. To prove intentional infliction of emotional distress under South Dakota law,[9] Huiner must show: (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause in fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct. *Anderson v. First Century Fed. Credit Union*, 738 N.W.2d 40, 51-52 (S.D. 2007). Defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Jefferson Partners, L.P.*, 653 N.W.2d 496, 500 (S.D. 2002). The question of whether defendant's conduct was extreme and outrageous is initially for the court to decide. *Id.*

Huiner complains of the following actions taken by Gross:

> - Gross required Huiner to teach the credit recovery class even though Huiner was not certified to teach the class and Huiner had alerted Gross of her lack of state certification;

---

[8] Huiner's claim for intentional infliction of emotional distress was against Gross only. Docket 1 at 12.

[9] The parties agree that South Dakota law applies to plaintiff's state-law claims.

- Gross talked to Huiner about a student swearing in
Huiner's class after Huiner admonished Gross's daughter
for talking during a quiz;

- Gross sent an "Areas of Concern" memo to Huiner that
accused Huiner of displaying a negative attitude,
improperly handling student swearing in class, poor use of
time in class, and poor planning;

- Gross observed Huiner's classes for long periods of time;

- Gross had an inordinate number of contacts with Huiner;

- Gross put Huiner on a Plan of Assistance; and

- Gross changed the requirements under the Plan of
Assistance.

None of these actions, whether taken individually or together, constitute

conduct that can be described as so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community. Rather, these are all

common actions taken by a principal when the principal believes that a

teacher's performance is below standards. Even if Gross actually believed

Huiner's performance was up to standards and she only took these actions to

harass Huiner, such actions still do not rise to the level of extreme and

outrageous conduct that is necessary for a plaintiff to prevail on an intentional

infliction of emotional distress claim. Liability for intentional infliction of

emotional distress will not extend to mere "annoyances, petty oppression, or

other trivialities." *Id.* at 500. At most, Huiner's alleged facts show Gross's

conduct may be repugnant to public policy, but the South Dakota Supreme Court has determined that such conduct gives rise to a contract cause of action and not to a tort cause of action. *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 227 (S.D. 1988). Because Gross's conduct was not extreme and outrageous, Huiner's claim for intentional infliction of emotion distress fails as a matter of law.

## IV.     Negligent Infliction of Emotional Distress

To establish a claim for negligent infliction of emotional distress under South Dakota law, Huiner must show: (1) negligent conduct on the part of the defendants; (2) emotional distress suffered by the plaintiff; and (3) physical manifestations suffered by the plaintiff from the distress. *Reynolds v. Ethicon Endo-Surgery, Inc.*, 454 F.3d 868, 874 (8th Cir. 2006) (citing *Nelson v. WEB Water Dev. Ass'n*, 507 N.W.2d 691, 699 (S.D. 1993)). "The three necessary elements of actionable negligence are: (1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Id.*

Defendants argue Huiner cannot establish a duty owed to her by defendants. Huiner asserts defendants' duty arises out of the No Child Left Behind Act of 2001 (NCLBA). Huiner states the NCLBA mandates instruction be given by a "highly qualified teacher," which is someone who has obtained full state certification and demonstrates competence in all the academic subjects in

which she teaches. Huiner also claims she was not qualified to teach the credit recovery class. Thus, she argues defendants had a duty not to make her teach the credit recovery class.

Huiner has not cited any authority to support imposition of such a duty on defendants. This is not surprising because if the provisions referenced by Huiner did create a duty, that duty would be owed to the students of the classes in which instruction was given, not to the instructors. Moreover, the NCLBA does not confer any type of private right of action. *See, e.g., Horne v. Flores*, 557 U.S. 433, 456 n.6 (2009); *Blakely v. Wells*, 380 F. App'x 6, 8 (2d Cir. 2010) (noting the No Child Left Behind Act does not provide a private right of action). Thus, Huiner has not established a duty owed to her by defendants. Because Huiner has failed to establish a duty owed to her by defendants, defendants are entitled to summary judgment on Huiner's claim for negligent infliction of emotional distress.

## CONCLUSION

Defendants move for summary judgment on Huiner's ADA failure to accommodate, First Amendment retaliation, intentional infliction of emotional distress, and negligent infliction of emotional distress claims. Huiner established that genuine issues of material fact exist with respect to her ADA failure to accommodate claim. But Huiner failed to present sufficient evidence to support her claims for First Amendment retaliation, intentional infliction of

emotional distress, and negligent infliction of emotional distress. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 35) on plaintiff's ADA failure to accommodate claim is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's First Amendment retaliation, intentional infliction of emotional distress, and negligent infliction of emotional distress claims is granted.

Dated September 26, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE